**Russell D. SCHILLIGO, Appellee,**

v.

**PUROLATOR COURIER CORP., Appellant.**

No. 86–1923.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1987.

Decided July 29, 1987.

Rehearing and Rehearing En Banc Denied Sept. 24, 1987.

Daniel J. Sullivan, St. Louis, Mo., for appellant.

Jerry A. Klien, Clayton, Mo., for appellee.

Before FAGG, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Purolator Courier Corporation appeals from the order of the district court denying its motion for j.n.o.v. or alternatively for new trial in this diversity case involving the Missouri Service Letter Statute.[1] The district court entered judgment upon a jury verdict in favor of Russell Schilligo for $1 actual damages and $125,000 punitive damages. Because we find no evidence of malice, we reverse the award of punitive damages.

## I. BACKGROUND

Russell Schilligo was employed by Purolator at its St. Louis Terminal from 1972 to 1981. This suit arose out of Schilligo's October 1981 termination from his supervisory position with Purolator. The evidence admitted at trial can be summarized as follows:

In the summer of 1981 anonymous letters complaining about morale problems in the St. Louis Terminal were sent to Purolator's home office in New York. In response to the letters James Rapp, Executive Vice President of the company, instructed Charles Meyers, Manager of the St. Louis Terminal, to prepare a memo on the morale problem. After discussing the problem with subordinate supervisors, Meyers reported that sexual affairs between supervisors and subordinates had given rise to complaints of favoritism and as a result morale was low. In particular Meyers reported that Schilligo at that time was having an affair with one of his subordinates, Linda Jasperson. At trial Schilligo and Jasperson denied that any favoritism had been shown and testified that Schilligo was terminated to dissuade union activity. For purposes of this appeal, however, the reasons for the termination are irrelevant.

In September 1981 Schilligo was suspended and on October 2 he was terminated. Included in the envelope with the no-

1. The Missouri Service Letter Statute provides:
    1. Whenever any employee of any corporation doing business in this state and which employs seven or more employees, who shall have been in the service of said corporation for a period of at least ninety days, shall be discharged or voluntarily quit the service of such corporation and who thereafter within a reasonable period of time, but not later than one year following the date the employee was discharged or voluntarily quit, requests in writing by certified mail to the superintendent, manager or registered agent of said corporation, with specific reference to the statute, it shall be the duty of the superintendent or manager of said corporation to issue to such employee, within forty-five days after the receipt of such request, a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service.
    2. Any corporation which violated the provisions of subsection 1 of this section shall be liable for compensatory but not punitive damages but in the event that the evidence establishes that the employer did not issue the requested letter, said employer may be liable for nominal and punitive damages; but no award of punitive damages under this section shall be based upon the content of any such letter.
Mo.Rev.Stat. § 290.140 (Supp.1984).

tice of termination was a short letter confirming Schilligo's employment.[2] Shortly thereafter Schilligo sent Meyers the following request:

To: Charlie Meyers

There is a Missouri statute by which you are legally required to furnish me with a written notice of the following within one week of your receipt of this correspondence:

1. Length of service with Purolator.
2. Description of jobs performed during time of employment with Purolator.
3. Explanation of termination from Purolator.

/s/ Russell Schilligo

Purolator presented testimony showing that a response was prepared and mailed, but Schilligo testified that he never received it. In December 1981 Schilligo sent a photocopy of his original request to Purolator. The copy contained no additional comments and was not accompanied by a cover letter. Meyers testified that the copy was placed in Schilligo's employee file and not answered because the original request had been answered.

On April 21, 1982 Schilligo's attorney mailed a letter to Rapp which stated:

Dear Mr. Rapp:

Please be advised that I have been retained by Russell Schilligo concerning efforts to obtain a Missouri service letter. I have reviewed your correspondence of October 2, 1981 and note that it fails to contain a statement of the true reason why my client was terminated from employment with Purolator.

I am therefore asking that you please remedy this deficiency by forwarding to me a service letter with respect to the above which fully satisfies all requirements of the Missouri Service Letter Statute.

Very truly yours,
/s/ Stuart R. Berkowitz

On May 19, 1982 Berkowitz was informed by letter that Rapp was unavailable

at that time but would respond shortly. On June 16 the following letter was sent:

Dear Mr. Berkowitz:

This is in response to your recent letter in which you advised that your client Russell Schilligo has retained you concerning efforts to obtain a Missouri Service letter. You asked for a letter stating the reason why Mr. Schilligo was terminated from employment with this Company, that is, a service letter that satisfies the requirements of the Missouri Service Letter Statute. You requested also that we forward the letter to you, not to Mr. Schilligo.

We are responding to your request, but this is without prejudice to our position that the Missouri service letter law does not obligate us to respond to a request from an attorney for a service letter to be sent to the attorney. We would further note that the Missouri Legislature has recently passed important amendments to the service letter statute, and we do not waive any of our rights under the law as amended.

Subject to all of the foregoing information, we supply you with the following information: Mr. Schilligo was employed by our Company from 30 August 1972 to 2 October 1981. He was employed as a courier supervisor, which involved day to day direction of a group of couriers who drive company owned motor vehicles, operating in the St. Louis area, delivering customers' messages and packages. The general character of his service was fair for most of his period of employment, until shortly before his termination, when we learned of the circumstances that resulted in his termination.

The reason for Mr. Schilligo's termination was that we believed that as a supervisor he had established a relationship with one of the employees working under his supervision and that this created an appearance of favoritism toward that subordinate employee in matters relating to that employee's route sched-

2. The letter stated:
To whom it may concern:
This letter is to confirm that Russell Schilligo was employed by Purolator Courier Corp.

from 30 August 1972 to 2 October 1981 as a courier supervisor.
/s/Charles A. Meyers
Sr. Regional Manager

ules. It was our belief that this perception of favoritism on the job was creating a serious morale problem among our St. Louis personnel. We concluded that for this reason Russell's employment should be terminated.

We are supplying you with this letter because you requested it in behalf of your client and because you asked that our letter be forwarded directly to you. You asked also that our letter satisfy the requirements of the Missouri Service Letter Statute. As you know, the law requires an employer who receives a proper request to state truthfully the reason for an employee's termination. We don't consider your request a proper one under that law, but since you asked for it, and since you assert that your request is based on the statute, we have stated plainly the reason for Russell Schilligo's termination. We do not concede that the service letter statute applies here, or that we are under any obligation to respond to a lawyer's request for a service letter to be sent directly to him, rather than to the terminated employee.

We leave it to you to decide what to do with this response to your request. For my part, I am signing it, sealing it in an envelope and mailing it to you in confidence. I will not show it to anyone, nor will I send copies of it to anyone. If it is published, that will be because you or your client has done so.

Sincerely yours,

PUROLATOR COURIER CORPORATION

/s/James D. Rapp.

Approximately twenty-five months after Rapp sent the letter to Berkowitz, Schilligo filed suit in state court alleging violation of the Missouri Service Letter Statute. The case was removed to federal court where a jury trial resulted in a verdict for Schilligo for $1 compensatory damages and $125,000 punitive damages. Purolator's motion for judgment notwithstanding the verdict or alternatively for new trial was denied.

## II. DISCUSSION

Our standard for reviewing the district court's denial of Purolator's j.n.o.v. motion is the same under both federal and Missouri law. *See Comerio v. Beatrice Foods Co.*, 616 F.Supp. 1423, 1425 n. 1 (E.D.Mo. 1985). We must consider the evidence in the light most favorable to Schilligo, assume all facts which Schilligo's evidence tends to prove, and give him the benefit of all favorable inferences. *Williams v. Ryder/P.I.E. Nationwide, Inc.*, 786 F.2d 854, 857 (8th Cir.1986). We can not, however, assume facts essential to Schilligo's case if they are not supported by the record.

In order to recover punitive damages under Missouri law a plaintiff must prove the existence of either legal or actual malice on the part of the defendant. *Schmidt v. Central Hardware Co.*, 516 S.W.2d 556, 560 (Mo.Ct.App.1974). Because there is no evidence of actual malice, the validity of the punitive damage award depends on whether there exists sufficient evidence of legal malice. Legal malice exists when the defendant intentionally does a wrongful act without just cause or excuse. *Stark v. American Bakeries Co.*, 647 S.W.2d 119, 123 (Mo.1983) (en banc). "To be assessed punitive damages, defendant must not only have intended to perform the act which is ascertained to be wrongful but must have known it was wrongful when he did it." *Id.*

To support a finding of legal malice based on circumstantial evidence, the facts necessary to the finding 1) may be inferred but reasonably must follow, 2) must not depend on speculation or conjecture and 3) must tend to exclude every other reasonable conclusion. *Id.* at 125. However, the burden of persuasion is on the plaintiff, so "where the evidence affords no more than equal support for either of two inconsistent and contradictory inferences as to the ultimate and determinative fact, liability is left in the field of conjecture, and there is a failure of proof." *Id.*

Because the jury awarded Schilligo punitive damages it must have found that Purolator intentionally chose not to send a service letter while knowing that it had a legal duty to do so. Under the common law an employer has no duty to provide a letter of recommendation or service letter. *Carr v.*

*Montgomery Ward & Co.,* 363 S.W.2d 571, 574 (Mo.1963). Purolator's duty, therefore, stems solely from the Service Letter Statute. Consequently, evidence that Purolator had knowledge of the statute must appear on the record. Purolator argues that no such evidence exists and we agree.

Schilligo presented no direct evidence that Purolator had knowledge of the statute in October 1981. In fact, the overwhelming majority of his evidence concerned the reasons for his termination and was at best a smoke screen designed to confuse the jury.[3] We have read the trial transcript and the briefs of the parties and have found insufficient evidence of knowledge. For example, Schilligo's October 1981 letter to Meyers is not sufficient to warrant a finding that Purolator had knowledge of the Service Letter Statute. The letter merely states that "[t]here is a Missouri statute" which requires that certain information be sent. Although the letter may have been sufficient to warrant a response from Purolator, and thus support an award of nominal damages it was not specific enough to warrant a finding that Purolator had actual knowledge of the statute.

This analysis is not inconsistent with Purolator's defense at trial that a response was prepared and sent to Schilligo. Meyers testified that Rapp prepared a letter for Meyers' signature and that he signed it and gave it to his secretary for mailing. The letter, however, contains no language from which one could infer that Purolator had knowledge of the Service Letter Statute. It is merely a response to Schilligo's request for information. Contrary to Schilligo's assertion, the letter does not indicate a thorough understanding of the Service Letter Statute.

Further, we disagree with Schilligo's argument that because Rapp knew of the statute in June 1982 when he wrote to Berkowitz, he also must have known of it in October 1981. Berkowitz's April 21 letter to Rapp requesting a response complying with the Missouri Service Letter Statute may have given Rapp notice of the statute and Rapp's response clearly indicates an understanding of the law. The record, however, is completely void of any evidence indicating that Rapp knew of the statute in October. Further, the Berkowitz letter is not a valid request under the statute because it did not come from the employee. Therefore, Purolator was not required to furnish a service letter to Schilligo. The fact that Rapp responded at all is strong evidence of an absence of malice.

We believe that ultimately the jury was left to speculate whether Rapp had knowledge of his legal duty to provide a service letter. Rapp had jurisdiction over twenty-three states and only one, Missouri, has a service letter statute. No direct evidence of Rapp's knowledge was introduced and the circumstantial evidence is entirely too weak.

Punitive damages are awarded to punish and deter outrageously wrongful conduct. In the present case the only wrongful conduct was a failure to issue a service letter, but failure to issue, standing alone, will not warrant an award of punitive damages. *See Comerio v. Beatrice Foods Co.,* 616 F.Supp. 1423 (E.D.Mo.1985). Failure to issue only entitles the plaintiff to actual compensatory damages but in this case Schilligo conceded that he had not suffered any damages.

The facts in this case do not warrant an award of punitive damages. Although the jury found that Purolator did not respond to Schilligo's October request for a letter there was no evidence that the failure to issue was malicious. In fact the evidence is to the contrary. Schilligo's termination

---

3. Schilligo conceded at trial that he had suffered no actual damages. Therefore, in order to recover more than a nominal sum, he had to prove that Purolator failed to issue a service letter. Under the 1982 amendment to the Service Letter Statute, retroactively applied to this case, *Vaughn v. Taft Broadcasting Co.,* 708 S.W.2d 656 (Mo.1986) (en banc), punitive damages can not be based on the content of a service letter. Consequently, the fact that Schilligo may have been terminated for reasons other than those stated by Purolator is irrelevant to the only real issue in this case—malicious failure to issue a service letter. Had Schilligo sought actual damages, then it would be relevant whether the stated reasons for his termination were accurate. As the case proceeded, however, several days of irrelevant and prejudicial evidence was presented to the jury, nearly turning the suit into one for wrongful discharge.

letter was accompanied by a non-derogatory letter of confirmation which satisfies two of the three requirements of the statute. Also, although Purolator was under no legal duty to respond to Berkowitz's letter, it did so anyway and through the response Schilligo received all of the information required by statute.

## III. CONCLUSION

Because we find that there exists insufficient evidence of malice we reverse the district court's order denying Purolator's j.n.o.v. motion. The order of the district court pertaining to nominal damages is affirmed.

Each party is to pay his or its own costs.