Sam J. BROOKS, Appellee,

v.

WOODLINE MOTOR FREIGHT, INC., Appellant.

No. 87–1437.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1988.

Decided July 28, 1988.

Rehearing Denied Sept. 2, 1988.

---

**1062**

William C. Martucci, St. Louis, Mo., for appellant.

Arthur A. Benson II, Kansas City, Mo., for appellee.

Before McMILLIAN and ARNOLD, Circuit Judges, and HARPER,* Senior District Judge.

McMILLIAN, Circuit Judge.

Woodline Motor Freight, Inc. (Woodline), an Arkansas corporation authorized to do business in Missouri, appeals from a final judgment entered in the District Court[1] for the Western District of Missouri upon a jury verdict finding that Woodline had discriminated against Sam J. Brooks on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and had violated the Missouri service letter statute, Mo.Ann. Stat. § 290.140 (Vernon Supp.1988).

The jury awarded Brooks backpay in the amount of $43,500 for the age discrimination claim, and nominal damages in the amount of $1 and punitive damages in the amount of $26,000 for the service letter violation. After the district court denied Woodline's post-trial motions for judgment notwithstanding the verdict (j.n.o.v.), new trial or remittitur, the parties were directed to submit briefs on Brooks's other remedy claims. The district court denied Brooks's request for reinstatement, but awarded him $43,100 as frontpay in lieu of reinstatement, and also awarded him $17,714.50 for attorney's fees and $661.60 for expenses.

For reversal, Woodline argues that the district court erred in (1) denying its motion for j.n.o.v., (2) instructing the jury on mitigation of damages, (3) awarding frontpay, (4) instructing the jury on punitive damages, and (5) refusing to give a proposed cautionary instruction. For the reasons discussed below, we affirm the judgment of the district court on all issues except the award of punitive damages, which we reverse and remand to the district court for further proceedings.

In May 1982 Brooks, then fifty-five years old, began working as a sales representative at Woodline's Kansas City area terminal. His primary responsibilities were to

---

* The Honorable Roy W. Harper, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

obtain shipping business, oversee sales operations, and deal with other local cartage agents. During Brooks's tenure as sales representative, his sales efforts accounted for more than ninety percent of Woodline's Kansas City sales revenues. The record also shows Brooks was the most efficient of Woodline's Kansas City sales representatives because, on a comparative basis over a five-month period, he produced $33 to $52 in revenue for each dollar spent, whereas his replacements brought in only $7.94 for each dollar spent. Woodline granted Brooks two salary increases during his period of employment. Woodline discharged Brooks in 1984.

At trial, Woodline contended that it discharged Brooks because of poor job performance. Woodline asserted that Brooks had failed to generate a proper ratio between less-than-load shipments and volume (full trailer) shipments, develop a satisfactory working relationship with local cartage agents, and adequately supervise the sales staff. Although Woodline was requested on at least three occasions to set forth its specific reasons for the discharge, Woodline did not do so until trial. Woodline maintained that it was unable to reduce Brooks's "overall, inadequate performance into discrete components."

*Denial of Motion for j.n.o.v.*

█ Woodline first argues that the district court erred in denying its motion for j.n.o.v. The standard for granting a j.n.o.v. is whether there is sufficient evidence to support the jury verdict. The decision of the district court is subject to de novo review. In deciding whether to grant a motion for j.n.o.v., the district court, as well as the appellate court, must view the evidence in the light most favorable to the prevailing party. *See, e.g., Bell v. Gas Service Co.*, 778 F.2d 512, 514 (8th Cir. 1985); *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 295 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). Like a directed verdict, j.n.o.v. should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party. *Bell v.*

*Gas Service Co.*, 778 F.2d at 514. This standard requires the district court, as well as this court on appeal, to resolve all factual conflicts in favor of Brooks as the prevailing party, assume all facts in his favor which the evidence tends to prove and give him the benefit of all reasonable inferences. Keeping this standard and the nature of proof required under the ADEA in mind, we must evaluate the evidence Brooks presented at trial.

The evidence presented by Brooks, and the reasonable inferences that can be drawn therefrom, provided a sufficient basis from which the jury could have reasonably concluded that Brooks's age was a determining factor in Woodline's decision to discharge him: (1) Brooks's job performance met Woodline's legitimate expectations, (2) Brooks was between 40 and 70 years old and thus a member of the group protected by the ADEA, (3) Woodline's articulated reasons for discharging Brooks were pretextual, and (4) Woodline replaced Brooks with significantly younger employees. It is undisputed that Brooks was a member of the group protected by the ADEA and that he was replaced by significantly younger employees. While there is conflicting evidence about whether Brooks's job performance met Woodline's legitimate expectations, the jury chose to accept Brooks's evidence.

Woodline vigorously argues that there is no evidence to support the jury's finding that age was a determining factor in the discharge decision. If direct evidence was the only way to prove that age was a determining factor in the employer's decision, then we would agree with Woodline. Much of Brooks's evidence of age discrimination is indirect and circumstantial. However, age discrimination plaintiffs do not have to establish by direct evidence that age was a "determining factor" in the employer's decision in order to prevail. They can prove their case "by showing either direct evidence of discrimination or evidence that the reasons given for the adverse action are a pretext to cloak the discriminatory motive." *Dace v. ACF Industries, Inc.*, 722 F.2d 374, 377 (8th Cir. 1983). "The special virtue of the indirect

method of proof is that it allows victims of age discrimination to prevail without presenting *any* evidence that age was a determining factor in the employer's motivation." *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409–10 (7th Cir.1984) (emphasis in original); *see, e.g., Holley v. Sanyo Manufacturing, Inc.*, 771 F.2d 1161, 1164 (8th Cir. 1985). *See also United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed. 2d 403 (1983) (Title VII); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981) (Title VII); *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (Title VII); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) (*McDonnell Douglas*) (Title VII).

Age discrimination is often subtle and "may simply arise from an *unconscious* application of stereotyped notions of ability rather than from a deliberate desire to remove older employees from the workforce." *Syvock v. Milwaukee Boiler Manufacturing Co.*, 665 F.2d 149, 154–55 (7th Cir.1981) (emphasis in original).

> Even an employer who knowingly discriminates on the basis of age may leave no written records revealing the forbidden motive and may communicate it orally to no one. When evidence is in existence, it is likely to be under the control of the employer, and the plaintiff may not succeed in turning it up. The indirect method compensates for these evidentiary difficulties by permitting the plaintiff to prove his [or her] case by eliminating all lawful motivations, instead of proving directly an unlawful motivation.

*La Montagne v. American Convenience Products, Inc.*, 750 F.2d at 1410 (footnote omitted). This is simply a variation of the familiar allocation of the burden of proof set forth in *McDonnell Douglas*, that is, where a plaintiff has eliminated the most obvious reasons for the employer's action, i.e., the plaintiff's failure to meet the employer's legitimate expectations (or, in cases of failure to hire or to promote, the plaintiff's lack of qualifications), an inference of discrimination is raised "because we know from our experience that people do not act in a totally arbitrary manner, without any underlying reason, especially in a business setting." *Furnco Construction Corp. v. Waters*, 438 U.S. at 577, 98 S.Ct. at 2950. We then require the employer to come forth and articulate "some legitimate, non-discriminatory reason" to explain the employment decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Once the employer articulates a legitimate, non-discriminatory reason, then the plaintiff must demonstrate that the articulated reason was not the real reason, but instead merely a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825.

Here, once the jury found that Brooks's job performance met Woodline's legitimate expectations, the jury could have easily concluded that Woodline's articulated reasons for discharge were pretextual. We note the district court's discussion of the sufficiency of the evidence of age discrimination:

> The jury was entitled to find age discrimination in this case.... The jury may well have concluded that [Woodline] terminated [Brooks] because it acted on a stereotype that he was not as likely to supply the same vigorous, on-the-street sales activity as might be expected from a younger person. [Woodline's] evasiveness or caution in giving reasons for termination probably counted against it.

*Brooks v. Woodline Motor Freight, Inc.*, No. 85–0668–CV–W–6, slip op. at 1 (W.D.Mo. Sept. 24, 1986) (memorandum and order).

In summary, there was ample evidence in the record to support the jury's finding that Woodline's decision to discharge Brooks for poor job performance was pretextual. The record shows that Brooks's job performance was superior and that his business experience and qualifications were exemplary. The record also reveals evasion and inconsistency on the part of Woodline in articulating the reasons for discharge. We hold the district court did not

err in denying Woodline's motion for j.n.o. v.

*Mitigation of Damages*

■ Woodline next argues that the district court erred in instructing the jury on mitigation of damages because, as a matter of law, Brooks failed to act reasonably in mitigation of damages. Woodline argues that Brooks looked for work for only about a month after his discharge, then imprudently started his own business, and later refused to accept a job offer in a related field for comparable or greater pay. We disagree.

Wrongfully discharged claimants must use reasonable efforts to mitigate their damages, *see, e.g., Fiedler v. Indianhead Truck Line, Inc.,* 670 F.2d 806, 809 (8th Cir.1982), but this burden is not onerous and does not require success. *See, e.g., Rasimas v. Michigan Department of Mental Health,* 714 F.2d 614, 624 (6th Cir.1983) (reasonable diligence standard), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). All that is required by law is an honest, good faith effort. *E.g., United States v. Lee Way Motor Freight, Inc.,* 625 F.2d 918, 938 (10th Cir.1979).

Here, the evidence shows that Brooks actively sought employment during the month after his discharge. He made several telephone calls a day to employers in the trucking industry, looking for comparable work, but found no leads or offers. Brooks then decided to use his own savings to start a trucking business. About six or eight weeks later, he did receive a job offer from another trucking company, which he considered and refused in order to pursue his own business venture and protect his investment. Our examination of the record convinces us that Brooks's efforts to mitigate his damages were reasonable and made in good faith. We hold the district court did not err in instructing the jury on mitigation of damages.

*Frontpay*

■ Woodline next argues the district court abused its discretion in awarding Brooks $43,100 as frontpay in lieu of reinstatement. Woodline does not challenge the district court's factual findings or the authority of the district court to award frontpay in appropriate circumstances as an equitable remedy. Woodline argues that reinstatement is the preferred remedy to avoid loss of future earnings and that frontpay in lieu of reinstatement should not be granted unless reinstatement is not feasible, citing *EEOC v. Prudential Federal Savings & Loan Ass'n,* 763 F.2d 1166, 1173 (10th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). Woodline acknowledges that frontpay in lieu of reinstatement may be appropriate "when the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible." *Id.* at 1172. However, Woodline denies that the requisite degree of hostility existed in this case. Woodline argues that the inevitable friction caused by the litigation process alone cannot make reinstatement inappropriate. *See, e.g., Dickerson v. Deluxe Check Printers, Inc.,* 703 F.2d 276, 281 (8th Cir. 1983). Otherwise, "a court might deny [reinstatement] in virtually every case if it considered the hostility engendered from litigation as a bar to relief." *Taylor v. Teletype Corp.,* 648 F.2d 1129, 1139 (8th Cir.), *cert. denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981).

Under the ADEA the district court must tailor the remedy to make the injured party whole. *See, e.g., Marshall v. Arlene Knitwear, Inc.,* 454 F.Supp. 715, 730 (E.D.N.Y. 1978), *aff'd in part, rev'd in part and remanded mem.,* 608 F.2d 1369 (2d Cir. 1979). The remedy may include frontpay, that is, monetary relief, in lieu of reinstatement. *E.g., Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1100 (8th Cir.1982); *accord Berndt v. Kaiser Aluminum & Chemical Sales, Inc.,* 789 F.2d 253, 261 (3d Cir.1986); *Smith v. Consolidated Mutual Water Co.,* 787 F.2d 1441, 1443 (10th Cir. 1986); *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 728 (2d Cir.1984); *Davis v. Combustion Engineering, Inc.,* 742 F.2d 916, 922–23 (6th Cir.1984); *Cancellier v. Federated Department Stores,* 672 F.2d 1312, 1319 (9th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982);

*Loeb v. Textron, Inc.*, 600 F.2d 1003, 1023 (1st Cir.1979). *Contra Kolb v. Goldring, Inc.*, 694 F.2d 869, 874–75 n. 4 (1st Cir. 1982).

The record in the present case supports the district court's findings that there was substantial animosity between the parties, the parties' relationship was not likely to improve, and the nature of the business required a high degree of mutual trust and confidence, which was noticeably lacking. For example, Woodline's vice-president testified that he wished he could choke Brooks and that he would not let anyone in the Kansas City area rehire him. This manager also questioned Brooks's honesty, his motives, his handling of other cartage agents, and his expense reports. We find no reason to disagree with the district court's assessment of the workplace atmosphere. We hold the district court did not abuse its discretion in awarding Brooks frontpay in lieu of reinstatement.

*Damages for Violation of Service Letter Statute*

Woodline next argues that the district court erred in giving instructions on punitive damages for violation of the Missouri service letter statute. Woodline argues that these instructions incorrectly set forth the applicable Missouri law. First, Woodline argues that, under Missouri law, punitive damages can only be awarded if the employer completely fails to issue a service letter and that an untimely service letter does not constitute a complete failure to issue a service letter. Woodline argues that because it did send Brooks a service letter, albeit more than nine months after it received the request, it could be held liable for only compensatory damages. Woodline also argues that the district court erred in submitting the issue of punitive damages to the jury because there was no evidence of actual or legal malice and, alternatively, if there was sufficient evidence, in refusing to give a proposed instruction defining malice.

It is not disputed that Brooks made three requests for a service letter: (1) a statutorily deficient request on September 6, 1984, (2) a follow-up telephone call, and (3) a statutorily sufficient request on October 8, 1984. Woodline admitted that it received both letters and the telephone call. Woodline did not respond to any of these requests. Its position was that it was unfamiliar with the requirements of the Missouri service letter statute, had never before provided a service letter and would not do so now. Woodline sent Brooks a service letter on July 8, 1985, about a month after Brooks filed this action.

We note, and Woodline seems to concede, that the service letter claim was tried under the 1982 version of the statute, which provides in pertinent part:

> Any corporation which violates the provisions of subsection 1 of this section shall be liable for compensatory but not punitive damages but in the event that the evidence establishes that the employer did not issue the requested letter, said employer may be liable for nominal and punitive damages; but no award of punitive damage under this section shall be based upon the content of any such letter.

Mo.Ann.Stat. § 290.140(2) (Vernon Supp. 1988). Subsection 1 requires an employer, within forty-five days after the receipt of a written request from an employee, sent by certified mail, to respond with a letter "setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service." *Id.* § 290.140(1).

Woodline first argues that because it eventually sent Brooks a service letter, it did not completely fail to comply with the statute and thus cannot be held liable for punitive damages. We disagree. Woodline's argument disregards the specific forty-five day time limit provided in the statute. Before 1982, the statute did not specify a time within which the employer had to issue a service letter. As long as an employer responded within a "reasonable time," it could not be found to have completely failed to issue a service letter within the meaning of the statute. *See Hanch v. K.F.C. National Management Corp.*, 615

S.W.2d 28, 34 (Mo.1981) (banc). However, in 1982, the Missouri legislature abandoned the reasonable time standard and replaced it with the specific forty-five day period. Under the statute as amended, an employer who fails to issue a service letter within forty-five days has failed to comply with the statutory requirement that the "requested letter" be issued within forty-five days. Mo.Ann.Stat. § 290.140(1). Thus, for purposes of the amended statute, an untimely service letter constitutes a complete failure to issue a service letter that will support both compensatory and punitive damages. *See Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 740 (8th Cir. 1985); *Talbert v. Safeway Stores, Inc.*, 651 F.Supp. 1563, 1566 (W.D.Mo.1987); *Ball v. American Greetings Corp.*, 752 S.W.2d 814 (Mo.Ct.App.1988). *Cf. Kincaid v. Pitney Bowes, Inc.*, 750 S.W.2d 550, 554 (Mo.Ct.App.1988) (no punitive damages where employer's response is incomplete; not complete failure to issue). Because Woodline's failure to issue the service letter within forty-five days after it received Brooks's proper request constituted a complete failure to issue a service letter, it could be held liable for compensatory and punitive damages.

 We cannot agree, however, that an employee can recover punitive damages for violation of the Missouri service letter statute without showing actual or legal malice on the part of the employer. *E.g., Schilligo v. Purolator Courier Corp.*, 824 F.2d 660, 663–64 (8th Cir.1987) (Missouri service letter statute); *Comerio v. Beatrice Foods Co.*, 616 F.Supp. 1423, 1426 (E.D.Mo.1985) (Missouri service letter statute); *Schmidt v. Central Hardware Co.*, 516 S.W.2d 556, 560 (Mo.Ct.App.1974). "[F]ailure to issue [a service letter], standing alone, will not warrant an award of punitive damages." *Schilligo v. Purolator Courier Corp.*, 824 F.2d at 664.

 Although the record in the present case does not support actual malice, there was sufficient evidence to support a finding of legal malice, which exists where a wrongful act is intentionally done without just cause or excuse. *See, e.g., Schmidt v. Central Hardware Co.*, 516 S.W.2d at 560. There was evidence in the record to show that Woodline not only knew about the requirements of the Missouri service letter statute but intentionally refused to comply with those requirements. The district court did not err in submitting the issue of punitive damages to the jury. However, the instructions on punitive damages, as given, failed to require the jury to find malice, actual, legal or otherwise, and to define malice. For this reason, we reverse the award of punitive damages and remand for a new trial on this issue only. *See generally* 3 E. Devitt, C. Blackmar & M. Wolff, Federal Jury Practice and Instructions Civil § 85.19 & notes (4th ed. 1987); Mo. Approved Jury Instructions Civil § 10.01 & notes on use (3d ed. Supp. 1988).

*Cautionary Instruction*

 Woodline next argues that the district court erred in refusing to give a proposed cautionary instruction on wrongful discharge. The giving of cautionary instructions is a matter committed to the discretion of the district court, and its decision will not be reversed absent a clear showing of abuse of discretion. We find no such abuse of discretion.

Accordingly, the judgment of the district court is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings on the punitive damages issue only.