# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 01-1201, 01-1202

_____

| | | |
|---|---|---|
| Sheri Callantine, | * | |
| | * | |
| Appellee/Cross Appellant, | * | |
| | * | |
| v. | * | Appeal and Cross Appeal from the |
| | * | United States District Court for the |
| Staff Builders, Inc., a New York | * | Western District of Missouri. |
| Corporation, | * | |
| | * | |
| Appellant/Cross Appellee. | * | |

_____

Submitted: September 14, 2001

Filed:  November 27, 2001

_____

Before WOLLMAN, Chief Judge, RICHARD S. ARNOLD, and RILEY, Circuit
Judges.

_____

RILEY, Circuit Judge.

Sheri Callantine (Callantine) brought the instant action after her termination by Staff Builders, Inc. (Staff Builders).  A jury returned a verdict in favor of Callantine on her state law claims for wrongful termination and for failure to provide a service letter as required by Missouri state law.  The jury awarded Callantine $2,807.85 in actual damages and $180,000 in punitive damages on the wrongful termination claim, and $1.00 in nominal damages and $57,850 in punitive damages on the service letter claim.  Staff Builders appeals the district court's denial of its motion for judgment as a matter of law or for a new trial.  Additionally, Callantine

cross-appeals challenging the district court's entry of an order of remittitur, which decreased the punitive damage awards to $50,000 and $25,000, respectively. We reverse the district court's denial of judgment as a matter of law on the wrongful termination claim, and we affirm the district court's denial of judgment as a matter of law on the service letter claim and its remittitur.

Callantine filed this action alleging she was wrongfully terminated in violation of public policy for failure to commit the illegal act of signing a backdated Medicare Form 485. Additionally, Callantine alleged Staff Builders failed to provide her with a service letter as required by Missouri Revised Statute § 290.140. The action was tried to a jury. The jury returned a verdict in favor of Callantine on both counts and awarded punitive damages on each.

Following trial, Staff Builders moved for judgment as a matter of law, a new trial and remittitur. The district court denied the motions for judgment as a matter of law and for a new trial, but granted the motion for remittitur of the punitive damage awards and entered judgment. Callantine objected to the remittitur and moved to alter or amend the judgment under Fed. R. Civ. P. 59(e). The district court summarily denied the motion.

On appeal, Staff Builders contends the district court erred in submitting the wrongful termination claim to the jury. It also challenges the punitive damage awards and amounts on both claims, and asserts error in instructing the jury on the scope and course of agency. Callantine challenges the district court's remittitur of punitive damages and the district court's denial of Callantine's motion to alter or amend the judgment after remittitur.

# I.    BACKGROUND

Staff Builders, a New York corporation, is wholly owned by Staff Builders, Inc., a Delaware corporation. Staff Builders performs payroll and personnel activities for the franchisees of Staff Builders, Inc. of Delaware, but does not supervise the day-to-day activities of medical personnel. Complete Home Health Care, Inc. entered into a franchise agreement with Staff Builders, Inc. of Delaware. Complete Home Health Care conducted business under the fictitious name of "Staff Builders of Cabool Home Health Care Services" (Cabool office). The Cabool office maintains and supervises a staff of home health care workers.

Callantine is a registered nurse who worked as a field nurse for the Cabool office from October 1996 until March 25, 1997, when she was terminated. Callantine provided skilled nursing services to homebound patients, primarily Medicare and Medicaid patients.

The evidence adduced at trial shows that medical personnel, such as Callantine, are required by Medicare to fill out Form 485 for patients who use Medicare as their primary insurance. A Form 485 includes a doctor's prescription for the treatment of a patient: for example, the doctor's determination that a patient is homebound and requires home health care for a certain length of time. Callantine described the Form 485 as: "It's the doctor's orders." A Form 485 generally spans a two-month certification time period from the start-of-care date, but may be designated for a shorter period of time. Recertification is required to continue home health care after the time period originally prescribed. The doctor who prescribes the home health care and the nurse who provides the home health care are both required to sign the form. The nurse's signature attests to the plan of treatment. Medicare does not pay for the home health care visits without the required signatures.

On February 7, 1997, Celia Wilson, a registered nurse, and Janet Ratteree, a home health aid, who both worked out of the Cabool office, were terminated. That day Ratteree, Nancy Sander, another registered nurse working out of the Cabool

office, and Callantine called the Missouri State Department of Health to report alleged improper procedures related to the decrease of service or discharge of patients and other alleged irregularities in the Cabool office. The Health Department took no action at that time.

On February 18, 1997, Callantine and Sander again called the Health Department. A representative told Callantine the Health Department would need proof of wrongdoing before pursuing an investigation. Thereafter, Sander obtained shredded documents from the Cabool office and Callantine assisted her in piecing them together. On February 24, 1997, the State initiated an investigation of the Cabool office. Sander was terminated on March 13, 1997, because the Cabool office management suspected she had called the Health Department.

Although she had been terminated, Sander returned to the Cabool office on March 25, 1997, to complete paperwork. Callantine accompanied her. While Sander completed paperwork, Leanna Duncan, Assistant Director of Nurses, printed a Form 485 containing certain patient information and presented the Form 485 to Callantine asking for her signature. The evidence shows that Callantine stated, "I won't sign that." Duncan asked, "Well, why won't you sign this?" Callantine responded, "Because I don't believe that patient is homebound and I don't want to backdate this document." Duncan said, "You've been making the visits on this patient." Callantine responded, "Yes, I have. I've made those visits that I needed to do to keep my job here." At that point, Gerre Thornhill, the owner of the Cabool office franchise, asked Callantine to leave the office. Callantine at first refused to leave because Sander was still completing paperwork, but later moved to the sidewalk outside the building. Callantine was terminated later that day.

Leanna Duncan testified Callantine was terminated for behavioral problems. Duncan cited a list of fourteen instances, including unprofessional behavior in front of patients and in the office, and failure to sign the Form 485 on the day Callantine was terminated.

The evidence shows Callantine had made visits twice a week to the patient listed on the Form 485, and Callantine had been paid for making those visits. Duncan testified Callantine had been asked to sign a Form 485 for the patient prior to March 25, 1997, but she had not done so.

Callantine testified the certification period for the patient on the form was March 2, 1997, to May 2, 1997. She further testified she had been instructed that a Form 485 must be signed either on or before the first day of the certification period. Duncan testified she had informed Callantine that she (Duncan) had spoken to the patient's doctor and the director of nurses about the patient and all had agreed that the home health care visits should continue.

Callantine also testified that she was asked to sign other Form 485s after the certification period began, to place a date next to her signature which was earlier than the date she was actually signing the form, and also to sign Form 485s without dating them. Additionally, Callantine testified she was instructed to make home health care visits to patients that she personally determined were not homebound as defined by Medicare.

On March 29, 1997, subsequent to her termination, Callantine sent a request for a service letter to Staff Builders' registered agent by certified mail, seeking a letter "[p]ursuant to Statute R.F.MO. 290.140."[1] Missouri law requires an employer to

---

[1]Callantine's request letter states:

> Pursuant to Statute R.F.MO. 290.140, I am requesting that you respond to me, in writing, with information regarding the nature and character of services I rendered, the duration of my employment, and for what cause I was discharged from my position at Staff Builder's Home Health Care located at: 502 Main Street, Cabool, MO 65689.

Joint Appendix at R144. "R.F.MO." is apparently a typographical error. The statute at issue should be referred to as "Mo. Rev. Stat." or possibly "R.S.MO."

provide an explanation of the reasons an employee was terminated when requested to do so by the employee and when certain statutory requirements are met.

On March 31, 1997, Staff Builders' registered agent received the request letter and forwarded it to "Ed McNicholas, Legal Department, Staff Builders" in New York. Ed McNicholas, a paralegal working for Staff Builders, received the request letter on April 1, 1997. Staff Builders did not respond to the request letter.

During trial, Renee Silver, corporate counsel for Staff Builders, testified she was not familiar with Missouri law or, specifically, the Missouri service letter statute. Further, Silver testified that other than the word "statute" in the sentence she would not have guessed "R.F.MO." stood for anything, particularly not the "Revised Statutes of Missouri," nor would she have known what publication was referenced or where to look.

We will first address the issues related to the wrongful termination claim.

## II.    DISCUSSION
### A.    Wrongful Termination

We review de novo the district court's denial of Staff Builders' motion for judgment as a matter of law. See Otting v. J.C. Penney Co., 223 F.3d 704, 708 (8th Cir. 2000). "Judgment as a matter of law is proper only when there is a complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for the nonmoving party." Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1194 (8th Cir. 2001) (internal quotations and citations omitted). We apply the same standard as the district court, viewing all the facts in Callantine's favor, granting her all reasonable inferences and not making credibility determinations or weighing the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

Callantine's employment relationship with Staff Builders is governed by Missouri law. Under Missouri law, an employee is considered to be "at-will" unless she is subject to a contract setting the duration of her employment or delineating the reasons for which she can be fired. Callantine did not have such an employment contract and was an "at-will" employee. "At-will" employees can be terminated at any time without cause. Paul v. Farmland Indus., Inc., 37 F.3d 1274, 1276 (8th Cir. 1994) (citing Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661, 662 (Mo. 1988) (en banc)).

However, Missouri generally recognizes a public policy exception to the at-will rule. Generally, the exception has been applied in cases involving employees fired for: (a) declining to violate a statute; (b) reporting violations of the law by employers or fellow employees; or (c) asserting a legal right. Saffels v. Rice, 40 F.3d 1546, 1550 (8th Cir. 1994); Luethans v. Washington Univ., 894 S.W.2d 169, 171 n.2 (Mo. 1995) (recognizing that Missouri courts had applied the exception and assuming that the public policy exception to the at-will employment doctrine existed). "The public policy exception to the at-will employment doctrine also requires proof of violation of a constitutional provision, a statute, a regulation, or other clear mandate of public policy." Porter v. Reardon Mach. Co., 962 S.W.2d 932, 938 (Mo. Ct. App. 1998).

Callantine based her claim for wrongful termination on the public policy exception to the at-will employment doctrine. Callantine alleged she was terminated in violation of public policy for refusal to engage in an illegal act, that is, when on March 25, 1997, she was fired for refusing to sign the Form 485 presented to her by the Assistant Director of Nurses, Leanna Duncan.[2] Callantine further asserts that

---

[2]Callantine asks this court to take judicial notice of Missouri Revised Statute § 575.060 (1995), regarding submitting false statements with the purpose of misleading public servants. As a general rule, a federal appellate court does not consider arguments and issues raised for the first time on appeal. See Tarsney v. O'Keefe, 225 F.3d 929, 939 (8th Cir. 2000). We decline to consider Callantine's argument, which was not raised before the district court. We find, however, that even

evidence in the record shows that signing the backdated form was in violation of the training she had been given by Staff Builders and that she had told Staff Builders signing the backdated Form 485 would constitute Medicare fraud. Callantine points to evidence that other acts, not only the March 25, 1997 incident, would be "contrary to the regulations of Medicare." Callantine argues the March 25, 1997 request to sign was an illegal act, evidence of which was pervasive and extensive.

Staff Builders argues Callantine failed to present any evidence that any regulation would have been violated had she signed the backdated Form 485. Staff Builders argues Callantine's own testimony given at trial was not sufficient to support submission of the claim to the jury.

We find the evidence offered at trial does not support a finding that the act Callantine refused, as described by Callantine to have occurred on March 25, 1997, was illegal or was a violation of public policy. There is no evidence that signing the Form 485, as requested, would amount to an illegal act, especially in light of evidence that Callantine admittedly had made the subject home health care visits and a doctor had certified that those visits were necessary. The record does not reflect that the Form 485 was fraudulent, false or misleading.

Signing a backdated form is not, by itself, an illegal act. In the ordinary affairs of business, forms cannot always be signed on the requisite due date for a myriad of legal reasons, for example: the press of other business, or insufficient information to complete the forms, or the unavailability of the signators or the forms themselves.

---

if that statute were considered, the record is devoid of evidence to show any violation of § 575.060. There is no evidence that the document would be presented to a public servant, that the purpose was to mislead, or even that a false statement was sought.

Callantine in her written and oral arguments failed to identify any probative facts to support a jury verdict that she was asked by Staff Builders to engage in an illegal act. Our search of the record has disclosed none.

Accordingly, we find that the evidence is insufficient as a matter of law to support the jury verdict, and that the district court erred in denying Staff Builders' motion for judgment as a matter of law.[3] Therefore, we find the district court erred in submitting the wrongful termination claim to the jury, and Staff Builders is entitled to judgment on that claim.

### B. Missouri Service Letter Statute
#### 1. Submission of punitive damages issue.

Under Missouri law, an employee of a corporation who is discharged may request a letter from her employer "setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service." Mo. Rev. Stat. § 290.140(1) (1993).

An employee who is entitled to a service letter, "has a cause of action if the corporation fails to issue the letter or issues a letter not conforming to all the statutory requirements." Labrier v. Anheuser Ford, Inc., 621 S.W.2d 51, 56 (Mo. 1981) (en banc). The failure to give a proper service letter is an invasion of the employee's legal rights, and an employee is entitled to a judgment for nominal damages without

---

[3]In relation to the claim for wrongful termination, Staff Builders asked this court to evaluate the jury instructions, specifically whether the district court erred for failure to define "scope and course of agency" as set forth in MAI 13.05 and 13.06. Since we have determined the evidence was insufficient to submit the wrongful termination claim to the jury, we need not address any alleged error in the jury instructions. Similarly, we need not address the parties' contentions with regard to the punitive damage award related to the wrongful termination claim.

proof of any actual damages.  Herberholt v. dePaul Cmty. Health Ctr., 625 S.W.2d 617, 622 (Mo. 1981) (en banc) (per curiam).

Further, Missouri law provides for punitive damages "in the event that the evidence establishes that the employer did not issue the requested letter."  Mo. Rev. Stat. § 290.140(2).  However, an employer's mere failure to respond to a service letter request, by itself, is insufficient grounds to award punitive damages.  Ruzicka v. Hart Printing Co., 21 S.W.3d 67, 76 (Mo. Ct. App. 2000); see also Schilligo v. Purolator Courier Corp., 824 F.2d 660, 664 (8th Cir. 1987).  In addition to the failure to issue a service letter, a plaintiff must prove the presence of malice.  Brooks v. Woodline Motor Freight, Inc., 852 F.2d 1061, 1067 (8th Cir. 1988); see Ruzicka, 21 S.W.3d at 76.  A plaintiff may show legal malice by showing the defendant did a wrongful act intentionally without just cause or excuse.  Herberholt, 625 S.W.2d at 624; see also Schilligo, 824 F.2d at 663.

A defendant's showing of lack of knowledge of the service letter statute can refute a finding of malice.  Comerio v. Beatrice Foods Co., 616 F. Supp. 1423, 1426 (E.D. Mo. 1985).  Citation to the service letter statute, inter alia, constitutes evidence from which a jury may infer legal malice.  Id. at 1427.  However, merely stating "there is a Missouri statute" is not specific enough to warrant a finding that the employer had actual knowledge of the statute.  Schilligo, 824 F.2d at 664.  Submission to the jury of the punitive damage issue is proper where a jury could reasonably conclude that deficiencies in a service letter were due to reckless indifference for the rights of the plaintiff under the statute.  J & J Home Builders, Inc. v. Hasty, 989 S.W.2d 614, 617 (Mo. Ct. App. 1999).

Staff Builders contends Callantine failed to present sufficient clear and convincing evidence to support submitting the punitive damages issue to the jury. We review this issue de novo.  Madison v. IBP, Inc., 257 F.3d 780, 794 (8th Cir. 2001).  Staff Builders argues Callantine failed to provide sufficient evidence that Staff Builders: (a) knew of the service letter requirement because Callantine's request

for a service letter was insufficient to provide Staff Builders with knowledge of the service letter requirement, and (b) intentionally refused to send the letter. Additionally, Staff Builders argues Callantine suffered no damage from the failure to receive a service letter, as evidenced by the nominal damage amount awarded by the jury.

In her request for a service letter, Callantine stated that a Missouri statute required specific information, set forth the information required by the statute, and cited to the statute. The fact that the citation to the Missouri statute contained a minor typographical error does not change our analysis.[4]  Furthermore, Staff Builders' registered agent sent the request letter to the attention of Staff Builders' legal department, and the legal department had resources to clarify any confusion arising from the typographical error. The legal department's testimony that it was unfamiliar with Missouri law is unavailing. Staff Builders had contacts with local Missouri counsel. There is no dispute that Staff Builders failed to respond to the request letter.

Staff Builders' argument that an award of punitive damages is inconsistent with the award of nominal damages must fail. Since Callantine did not present evidence of actual damages related to the service letter claim, the jury's award of nominal damages is consistent with the lack of a service letter, which impinged upon Callantine's statutory right. In such a case, Missouri law allows a finding of nominal damages with an award of punitive damages. See Herberholt, 625 S.W.2d at 622 ($1.00 nominal and $50,000 punitive damage award) and J & J Home Builders, Inc., 989 S.W.2d at 615 ($1.00 nominal and $13,750 punitive damage award).

We find that Staff Builders' inaction with respect to the service letter amounted to reckless indifference to Callantine's statutory rights. Accordingly, we find

---

[4]That an attorney would not recognize Callantine's erroneous citation as a reference to a statute strains our credulity.

Callantine presented evidence sufficient to submit a claim for punitive damages to the jury on her service letter claim.

### 2. Amount of punitive damage award.

Both parties challenge the punitive damages award. Staff Builders argues that further remittitur or a new trial is warranted because the punitive damage award is grossly excessive, is against the weight of the evidence, violates the due process clause of the Fourteenth Amendment, and is the product of passion or prejudice. In contrast, Callantine contends the original verdict was not excessive, and challenges the remittitur as a monstrous and shocking injustice.

"Missouri places no set limit on punitive awards, but requires that 'when punitive damages are awarded by a jury, both the trial court . . . and the appellate court review the award to ensure that it is not an abuse of discretion.'" Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 576 (8th Cir. 1997) (quoting Call v. Heard, 925 S.W.2d 840, 849 (Mo. 1996) (en banc)). The factors to be considered include "the degree of malice or outrageousness of the defendant's conduct, aggravating and mitigating circumstances, the defendant's financial status, the character of both parties, the injury suffered, the defendant's standing or intelligence, and the relationship between the two parties." Id. The district court has committed an abuse of discretion when the punitive damages award is so disproportionate to the factors relevant to the size of the award that it reveals "improper motives or a clear absence of the honest exercise of judgment." Id. (quoting Call, 925 S.W.2d at 849).

We review de novo the district court's determination of the constitutionality of punitive damage awards. Cooper Indus., Inc. v. Leatherman Tools Group, Inc., 121 S. Ct. 1678, 1685-86 (2001). In reviewing the constitutionality of the award in this case, we find the punitive damage award is consistent with due process and does not implicate constitutional concerns.

We review the district court's reduction in damages for an abuse of discretion. Thorne v. Welk Inv., Inc., 197 F.3d 1205, 1211 (8th Cir. 1999). The denial of a motion for a new trial or remittitur will only be reversed upon a manifest abuse of discretion or because the verdict is so grossly excessive the result is monstrous or shocking. Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1194 (8th Cir. 2001); Thorne, 197 F.3d at 1211. With regard to the remittitur of punitive damages, the district court must consider the factors relevant to the reasonableness of a punitive damages award, including the degree of reprehensibility of the defendant's conduct, and the ratio between the actual harm inflicted on the plaintiff and the punitive damages award. Thorne, 197 F.3d at 1211.

Jury verdict amounts in service letter judgment cases in Missouri range from $9,999 to $100,000, with the mode amounts ranging from $10,000 to $30,000, all with nominal damage awards of $1.00. See, e.g., Thorne, 197 F.3d at 1211-12 (upholding remittitur from $50,000 to $10,000 punitive damage award); Herberholt, 625 S.W.2d at 624 (upholding conditional remittitur of $1.00 nominal from $100,000 to $50,000 punitive damage award); Hanch v. K. F. C. Nat'l Mgmt. Corp., 615 S.W.2d 28, 30, 37 (Mo. 1981) (upholding remittitur to $9,999 punitive damage award); J & J Home Builders, 989 S.W.2d at 615 (upholding jury award of $13,750 punitive damages); Alderson v. Clark Oil & Refining Corp., 637 S.W.2d 84, 85, 89 (Mo. Ct. App. 1982) (reversing trial court and requiring reinstatement of $1.00 nominal and $100,000 punitive damages).

Our review of the record shows that the district court properly evaluated the factors set forth in Kimzey as well as the ratio of actual to punitive damages in its order of remittitur. Additionally, the district court noted Callantine was out of work for only 29 days, during which she drew unemployment. Finally, the district court determined the jury had "double counted" because the evidence for each claim overlapped. The district court found no evidence of passion or prejudice on the part of the jury, and Staff Builders failed to refer us to any specific instances. Because the

district court carefully evaluated the factors associated with the reasonableness of the award prior to ordering remittitur, we find no abuse of discretion.

After the district court's entry of judgment in the remitted amount, Callantine moved pursuant to Fed. R. Civ. P. 59(e) to alter or amend the order of remittitur. The district court characterized the motion as a "motion for reconsideration," and denied the motion without further comment. Callantine argues the denial was an abuse of discretion. She contends the motion under Rule 59(e) was an attempt to correct a clear error or prevent manifest injustice, elaborating on the factors for remittitur discussed above.

We review a district court's decision to grant a Rule 59(e) motion to alter or amend a judgment for abuse of discretion. Computrol, Inc. v. Newtrend, L.P., 203 F.3d 1064, 1069-70 (8th Cir. 2000). Because we have found that the district court's remittitur was reasonable, we find no abuse of discretion in remitting the punitive damage amount for the service letter claim or in denying the motion to alter or amend the order of remittitur.

## III.   CONCLUSION

For the foregoing reasons we affirm the judgment of the district court on the service letter claim with its associated remittitur of punitive damages, and reverse the judgment with regard to the wrongful termination claim. The case is remanded to the district court for entry of judgment consistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-