**Euna Fay BLAKE, Plaintiff,**

v.

**J.C. PENNEY COMPANY, INC., Defendant.**

Civ. No. 88–2054.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Sept. 27, 1988.
On Motion for Judgment Notwithstanding
Verdict Oct. 26, 1988.

Mark Petzinger, Nichola O'Kelley, Dallas, Tex., for defendant.

Betsy Hall, Washington, D.C., for plaintiff.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### Equitable Remedies

This is an age discrimination in employment case filed under 29 U.S.C. § 621 et seq. The court has jurisdiction under 28 U.S.C. §§ 1331 and 1337.

The matter was tried to a jury on September 28 and 29, 1988, and the jury was asked and answered the following interrogatories:

*Interrogatory No. 1:* Do you find from a preponderance of the evidence that the age of the plaintiff, Euna Blake, was a determining factor in the defendant's decision to fire or to discharge Euna Blake? Answer: Yes. Dated 22 September 88, Signed Billy Dwayne Bell, Foreperson.

*Interrogatory No. 2:* Answer this Interrogatory only if you have answered 'Yes' to Interrogatory Number 1. State the amount of wages and other benefits you find from a preponderance of the evidence that plaintiff has lost as a result of her discharge. Answer: Amount $35,000. Dated 22 Sep. 88, Signed Billy Dwayne Bell, Foreperson.

*Interrogatory No. 3:* Answer this Interrogatory only if you have answered 'Yes' to Interrogatory Number 1. Do you find from a preponderance of the evidence that the defendant is guilty of a willful violation of the age discrimination in employment act? Answer: Yes. Dated 22 September 1988, signed Billy Dwayne Bell, Foreperson.

*Interrogatory No. 4:* State the amount of front pay you find from a preponderance of the evidence plaintiff is entitled to. Answer: $106,240.00 amount. Dated 22 September 88, signed Billy D. Bell, Foreperson.

■ At the time the court submitted Interrogatory No. 4, plaintiff's attorney made the court aware that it was plaintiff's position that "front pay", being equitable in nature, was for the court to determine.

Because case citations for that position were not provided at that time, the court decided to submit Interrogatory No. 4 with the understanding that, if it later came to believe that such determination was equitable and for the court to make, it would consider the jury's answer to that interrogatory as advisory in nature as permitted by Rule 39(c) of the Federal Rules of Civil Procedure. It now appears to the court that both the determination of whether reinstatement or front pay should be awarded, and, if front pay is the proper remedy, the amount of such, is equitable and for the court to determine. *Dickerson v. Deluxe Check Printers, Inc.,* 703 F.2d 276 (8th Cir.1983); and *Cleverly v. Western Electric Co.,* 594 F.2d 638 (8th Cir.1979).

In any event, as the court made clear to the jury in Instruction No. 21 provided to the jury prior to its deliberation on Interrogatory No. 4, it was recognized that whether the proper relief was reinstatement or front pay was for the court to determine. After consideration of the evidence at the trial and the supplemental hearing held immediately after the jury verdict, the court has determined that the proper remedy in this case, in the event that the verdict survives post judgment motions, is for reinstatement.

The facts necessary for that determination are not in dispute. The evidence shows that plaintiff was employed by defendant in 1967 and was, for several years prior to her termination on April 26, 1986, a valued employee of J.C. Penney Company, in its shoe department in the Central Mall located in Fort Smith, Arkansas. It appears clear from the evidence that management of defendant consistently rated plaintiff's performance to be "outstanding, far exceeds job requirements; exceptionally high quality performance." Plaintiff's Exhibits 1, 2, and 3. It appears that management believed that plaintiff worked well with others, including her immediate supervisor, Reba Pffeifer. Although plaintiff testified that she believed that Ms. Pffeifer harassed her prior to her termination, that is not supported by the evidence. In this regard, the court notes that the evaluation

forms referred to above, each giving Ms. Blake the highest rating possible, were prepared and executed by Ms. Pffeifer.

It appears undisputed that Ms. Blake's "problem" arose from her association with Daniel Hubbard, another employee in the shoe department at Penney's. It is not contended that Mr. Hubbard was a part of management and had no duties that could be considered "management" duties. He was a selling specialist (shoe salesperson) as was Ms. Blake. During the period prior to Ms. Blake's termination, her fellow employee, Hubbard, undoubtedly treated her in a contemptible manner, although there is dispute about whether his conduct continued after management gave him a "corrective interview". He referred to her as "a senile old lady" and made other degrading comments directed at her.

The evidence shows that less than two weeks before Ms. Blake's termination, she advised the personnel manager at the store, Nelda Moore, that she was still dissatisfied in the department because of her treatment by Hubbard. She asked for a transfer to another department. Ms. Moore told her that they had no positions in other departments and that she should "stick it out" because she had only three more years to go before she could retire. On the Saturday before the termination, Ms. Blake became incensed because of what she believed was unfair conduct by Hubbard. She believed that Hubbard had "cut in front of her" to take a customer and, since the sales people were on a commission, this would ultimately affect her income. As a result of her rage, she slapped Hubbard on the cheek hard enough to cause a red welt. This was done in front of the customer that Hubbard was waiting on at the time. The customer reported the incident to management and complained about Ms. Blake's conduct.

Ms. Moore then conducted an investigation and, after interviewing several people, determined that she had no choice under the company's personnel policies but to terminate plaintiff. After a meeting between Ms. Moore and other management employees, she prepared the forms necessary to effect the termination, and called Ms. Blake in for a conference. She asked Ms. Blake if she cared to present her side of the controversy, and she declined to do so. She was terminated.

■ In view of those facts, the court believes that the proper equitable remedy is reinstatement. As the Court of Appeals pointed out in *Dickerson, supra*, the Supreme Court has held in *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) that a district court should seek "to make persons whole for injuries suffered on account of unlawful employment discrimination." The Court of Appeals in *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093 (8th Cir.1982) said the district court should attempt to carry out "the ADEA's purpose of recreating the circumstances that would have existed but for illegal discrimination."

It appears obvious from *Dickerson, supra*, and other cases cited in that decision, that the preferred remedy in cases such as this one is reinstatement, and that that is the remedy that trial courts should afford except in unusual circumstances. As the Supreme Court said in *Albemarle Paper, supra*, 422 U.S. at 421, 95 S.Ct. at 2373, if a district court declines to order reinstatement it should "carefully articulate" its rationale for doing so.

The court is convinced that, under most circumstances, reinstatement is the proper remedy, and has concluded that that is so in this case. There are, of course, cases in which front pay or some other equitable remedy is appropriate, such as those in *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061 (8th Cir.1988), and cases cited in that opinion, but none of the factors warranting front pay in those cases are present in this one. As already indicated, prior to Mrs. Blake's becoming enraged and doing what she foolishly did, she was a valued employee. Every witness from Penney management who testified obviously had high regard for her and her performance as an employee. She was a shoe salesperson at the mall in Ft. Smith and there is no reason to believe that she cannot continue to do that job if she de-

sires. There was no evidence, either during the trial, or at the supplemental hearing, which indicates that there is likely to be such friction at the workplace if she is reinstated to make reinstatement inappropriate. As the Court of Appeals has said in more than one case, the inevitable friction caused by the litigation process alone cannot make reinstatement inappropriate otherwise, "a court might deny [reinstatement] in virtually every case if it considered the hostility engendered from litigation as a bar to relief." *Taylor v. Teletype Corp.*, 648 F.2d 1129, 1139 (8th Cir. 1981) *cert. denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981). *See also Dickerson, supra.*

It is true that plaintiff testified at the supplemental hearing that she did not want to be reinstated because she was afraid of retribution, but gave no reasons for that other than her fear that her employer might not appreciate the fact that she had filed suit. As indicated above, that is simply not enough and the court finds that reinstatement is the proper remedy.

Even though, as is reflected by the record at the trial of this matter, the court fully expects a motion for judgment not withstanding the verdict to be filed, and the court believes that such motion may have merit, it has decided to enter a judgment on the jury verdict so that the court's determination on the "front pay" issue can be included in any appeal in the event the court grants the judgment not withstanding a verdict motion.

The court will contemporaneously herewith enter judgment in favor of the plaintiff on the jury verdict in the amount of $70,000 and will order that plaintiff be reemployed at her position prior to her termination, or a like one, to become effective after any post judgment motions filed herein are disposed of.

### JUDGMENT

On this 27th day of September, 1988, for the reasons set forth in a memorandum opinion filed contemporaneously herewith, the court hereby enters judgment in favor of the plaintiff in the amount of $70,000. It is further ORDERED AND ADJUDGED that plaintiff be reinstated to her former position or a like one, to be effective upon final disposition of any post judgment motions filed herein. In the event that such post judgment motions are decided in favor of plaintiff, she will be awarded her costs herein expended and the court will, upon proper notice to the parties, consider an award of attorney's fees.

IT IS SO ORDERED.

### On Motion For Judgment Notwithstanding Verdict

This is an age discrimination in employment case filed under 29 U.S.C. § 621 *et seq.* The court has jurisdiction under 28 U.S.C. §§ 1331 and 1337.

A judgment upon the jury verdict was entered in this case on September 27, 1988, and in the memorandum opinion issued the same date preparatory to the issuance of the judgment, the court set forth certain of the facts pertinent to a resolution of the issue (Equitable Remedies) discussed in that opinion. The court will not reiterate in this opinion the matters included in the earlier one, but will discuss the facts or expand the earlier discussion only as necessary to explain the court's conclusions in relation to the issues now before it.

Both at the conclusion of plaintiff's case and again at the close of all the evidence, the defendant moved for a directed verdict as allowed by Rule 50 of the Federal Rules of Civil Procedure. At that time the court took the motions under advisement, but candidly advised counsel and the parties, on the record, that it did not believe that plaintiff's case warranted submission to the jury in that the evidence was not such that reasonable minds could differ in respect to the threshold question of whether defendant had discriminated against plaintiff because of her age. The court advised counsel and the parties that, nevertheless, as the Court of Appeals for the Eighth Circuit had recommended on more than one occasion,[1] it would allow the matter to be con-

---

1. In *Dace v. ACF Industries, Inc.,* 722 F.2d 374, 379 n. 9 (8th Cir.1983), the court said: "This

case illustrates again that it is usually better practice for a district court, faced with a motion

sidered by the jury, and if a verdict was returned in favor of the plaintiff it would, more than likely, grant a motion for judgment notwithstanding the verdict. As described in the earlier memorandum opinion of this court, the jury returned a verdict in favor of the plaintiff and judgment on that verdict was entered.

As the court expected, it is now faced with defendant's motion for judgment notwithstanding the verdict. The Court of Appeals for the Eighth Circuit recently, in *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1062 (8th Cir.1988), set forth the standard that trial courts are to follow in ruling on such motions as follows:

> The standard for granting a j.n.o.v. is whether there is sufficient evidence to support the jury verdict. The decision of the district court is subject to de novo review. In deciding whether to grant a motion for j.n.o.v., the district court, as well as the appellate court, must view the evidence in the light most favorable to the prevailing party. *See e.g., Bell v. Gas Service Co.*, 778 F.2d 512, 514 (8th Cir.1985); *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 295 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). Like a directed verdict, j.n.o.v. should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party. *Bell v. Gas Service Co.*, 778 F.2d at 514. This standard requires the district court, as well as this court on appeal, to resolve all factual conflicts in favor of Brooks as the prevailing party, assume all facts in his favor which the evidence tends to prove and give him the benefit of all reasonable inferences.

Keeping this standard and the nature of proof required under the Age Discrimination in Employment Act in mind, the court must now evaluate the evidence presented at trial by the plaintiff to support her contention that she was discriminated against by defendant because of her age.

In *Brooks, supra,* the Court of Appeals, citing and quoting from *LaMontagne v. American Convenience Products, Inc.,* 750 F.2d 1405 (7th Cir.1984) recognized that the plaintiff might meet her ultimate burden of proving that age was a "determining factor" in defendant's decision to terminate her in either of two ways. She may try to meet her burden directly, by presenting direct or circumstantial evidence that age was a determining factor in her discharge, or indirectly by showing that the reasons given by the defendant for the discharge are pretextual only. *See also McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Dace supra.*

In this case, the court is convinced that plaintiff has totally failed to meet her burden using either method, and that, even when the stringent standard for considering motions for judgment notwithstanding the verdict outlined above is utilized, reasonable minds could not differ.

■ The court believes that there is absolutely no evidence from which a reasonable person could conclude that Ms. Blake was terminated for any reason other than her assault of a fellow employee more particularly described in the court's memorandum opinion filed September 27, 1988. As the court concluded in that opinion, the actions of the fellow employee were contemptible, to say the least, but there is absolutely no evidence that that individual had any supervisory or management responsibilities. It is also evident from the testimony of other co-workers of that individual that none of them particularly liked him because he appeared to treat everyone in a contemptible manner irrespective of their sex or age.

for directed verdict, to allow the case to go to the jury and address the issue by way of judgment n.o.v. if necessary. The jury may find for the moving party, in which case the issue disappears. If the verdict is against the moving party and if judgment n.o.v. is granted, and if this Court decides on appeal that it should have been denied, the verdict can simply be reinstated and no new trial is necessary." *See also Dale v. Janklow,* 828 F.2d 481 (8th Cir.1987) *cert. denied,* —— U.S. ——, 108 S.Ct. 1486, 99 L.Ed.2d 714 (1988).

684

In support of her position, plaintiff contends, in her brief at P. 5, that:

> In this case, Plaintiff had both direct and indirect proof of age discrimination. Plaintiff's evidence showed that, for a period continuing over two years, another sales associate (Daniel Hubbard) harassed her by calling her names such as 'senile old woman,' 'crazy old woman' and so forth, and by suggesting that she quit working because she didn't need the money, whereas he did, Hubbard's sales performance included 'hogging' a number of customers and 'stealing' customers from other sales associates, according to the testimony of the four other sales associates who testified (Blake, Royce Colmen, Betty Gassaway and Randall Bruce). Apparently his performance with regard to Plaintiff and the other sales associates was so bad that he received a written corrective interview on the subject on March 17, 1986.

Using the required standard for considering a motion for judgment notwithstanding the verdict, the court agrees that reasonable minds could conclude that the evidence supports such contention. However, even though that is so, the evidence indicates, as plaintiff's delineation of it shows, that the co-workers conduct directed against all co-workers, resulted in attempted corrective action by management. There is no evidence that management authorized, supported, or even condoned Hubbard's conduct. Instead, they gave him, as his personnel file reflects, a "written corrective interview".

The court believes that the evidence shows that, at the very least, management personnel of the defendant attempted to alleviate the situation when it was called to their attention but, even if they did not, there is not one iota of evidence that their actions were in any way motivated by any desire to terminate or otherwise discriminate against Ms. Blake because of her age.

Plaintiff argues that a comment that she attributes to the store personnel manager, Nelda Moore, is evidence that supports her contention that there was sufficient evidence of age discrimination to allow the jury verdict to stand. She says that, approximately two weeks before the incident which resulted in plaintiff's termination, she asked Ms. Moore for a transfer because she was dissatisfied in the shoe department. Ms. Moore did not transfer her but, instead, told her to "stick it out" because she only had three years to go before she could retire. The court does not understand how it can be argued with any merit that that statement supports an inference that Ms. Moore, acting for the defendant, desired to terminate plaintiff because of her age. To the contrary, it appears from that statement that what Ms. Moore was telling her was that she wanted her to stay on the job and that she attempted to persuade her to do so by pointing out that she could retire in a relatively short time.

Thus, there is absolutely no basis for the court to conclude, by direct evidence, that reasonable minds could find from the evidence in this case that one of the motivating factors for plaintiff's termination was her age. To the contrary, the evidence appears to be overwhelming that she was terminated because she unwisely accosted and assaulted a co-worker in the presence of a customer of the store, an occurrence that so alarmed the customer that it was reported by him to management.

The court now turns to the question of whether reasonable jurors could conclude that there is evidence to support the verdict when the indirect *McDonnell Douglas* form of proof is used. The court concludes that there is not.

This method of proof was delineated and explained in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and requires that the plaintiff first prove a prima facie case of discrimination by showing (1) that she was in the protected class, (2) that she was doing her job well enough to meet her employer's legitimate expectations, (3) that in spite of her performance she was discharged and, (4) that the employer sought a replacement for her. It is probable that plaintiff has met her burden or at least that reasonable jurors could conclude that she had with respect to elements one and

four, but the court concludes that reasonable minds could not believe that she did her job, at least at the end, as the employer legitimately expected. It was quite legitimate to expect its employees, in a service business such as that in which it was engaged, to refrain from assaulting each other, especially in the presence of customers.

As the court said in *Brooks supra,* at 1064: "Once the employer articulates a legitimate non-discriminatory reason, then the plaintiff must demonstrate that the articulated reason was not the real reason, but instead merely a pretext for discrimination." The employer says that plaintiff was terminated because she slapped a coworker, and the court believes that, "without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached" and that, therefore, a motion for directed verdict or motion for judgment notwithstanding the verdict is appropriate. *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970). The motion will be granted.

Defendant's motion was for judgment notwithstanding the verdict or, alternatively, a motion for a new trial. Rule 50(c)(1) directs trial courts under such circumstances, to conditionally rule on the motion for new trial. The court concludes that, if this court's judgment is vacated or reversed on appeal, the motion for a new trial should be granted. The court's reasons for doing so are those set forth above. For the reasons stated, the court concludes that, even if the Court of Appeals ultimately determines that the granting of a motion for judgment notwithstanding the verdict was not appropriate, at the very least the evidence is against the "clear weight," overwhelming weight," or "great weight" of the evidence. *Goldsmith v. Diamond Shamrock Corp.,* 767 F.2d 411, 416 (8th Cir.1985), and *Firemen's Fund Ins. Co. v. Aalco Wrecking Co., Inc.,* 466 F.2d 179, 186 (8th Cir.1972) *cert. denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973).

An order granting the motion for judgment notwithstanding the verdict will be contemporaneously entered.

## ORDER

On this 25th day of October, 1988, for the reasons set forth in a memorandum opinion filed contemporaneously herewith, the court finds that the jury verdict returned at the trial of this matter on September 22, 1988, and the judgment entered on that verdict filed on September 27, 1988, should be and they hereby are set aside and judgment is entered in accordance with defendant's motion for directed verdict made at both the close of plaintiff's case and at the close of all the evidence. Therefore, the court finds that plaintiff should take nothing on her complaint filed herein and that this matter should be and it hereby is dismissed with prejudice. Defendant shall recover its costs herein expended.

IT IS SO ORDERED.